<div align="center">

**UNITED STATES DISTRICT COURT**

**DISTRICT OF CONNECTICUT**

</div>

| | |
|---|---|
| UNITED STATES OF AMERICA | :   CASE NUMBER 3:21CR0090 (VAB) |
| vs. | : |
| ALICIA GARDNER | :   OCTOBER 20, 2021 |

<div align="center">

**DEFENDANT'S SENTENCING MEMORANDUM**

</div>

## I.  INTRODUCTION

In May of 2018, Garden Homes Management Corporation (GHMC), the management company of Salem Village I and II and St. Mary's Elderly Housing Complex confirmed that one of its employees, Alicia Gardner, had been fraudulently diverting funds from the Brooklyn Elderly Limited Partnership and St. Mary's Housing Partnership for her personal use.  The tenants of these facilities receive rental assistance through the United States Department of Housing and Urban Development (HUD) and/or the United States Department of Agriculture (USDA).  Accordingly, the matter was referred to the US Department of Agriculture for further investigation and prosecution.

On or about June 3, 2021, Mrs. Gardner waived indictment and appeared before the Court to enter a guilty plea to an Information charging her with Theft Concerning a Program Receiving Federal Funds, in violation of 18 U.S.C. §666(a)(1)(A).  Following her guilty plea, Mrs. Gardner was released on a personal recognizance bond and referred to Pretrial Services supervision.  She remains compliant with the conditions of her release.  Sentencing is scheduled for November 3, 2021.

In accordance with Rule 32(o) of the Local Rules of Criminal Procedure the defendant respectfully submits this memorandum as an aid to the Court and in support of her request for a variance or non-guideline sentence.  Mrs. Gardner is 51-years old with no prior

<div align="center">

1

</div>

criminal history.  In this memorandum she presents arguments to explain how a sentence of incarceration would have devastating consequences for her disabled husband and elderly mother, who suffers from a traumatic brain injury and dementia.  Mrs. Gardner is their sole provider and caretaker of these two individuals.  Counsel respectfully submits that Mrs. Gardner's history and character, as well as her dedication to her family supports a sentence well below the advisory guideline range, which would satisfy the Court's mandate to impose a sentence that should be "sufficient, but not greater than necessary" to fulfill the purposes of sentencing.  See U.S.C. §3553(a).

## II.   SENTENCING GUIDELINES

A Presentence Report was prepared by a United Sates Probation Officer who was assigned this investigation.  The defendant disagrees with the Offense Level Computation set forth in the Presentence Report.  See PSR ¶¶ 34-44.  She concedes that the offense conduct establishes a base offense level of 6 and that 12-levels should be added because the loss exceeded $250,000 but was not greater than $550,000.  See U.S.S.G. §2B1.1(b)(1)(G). Additionally, the defendant agrees there should be a 2-level role adjustment for abuse of position of public or private trust, pursuant to U.S.S.G. §3B1.3.  However, the PSR also includes a 2-level enhancement under U.S.S.G. §2B1.1(b)(2)(A)(i) concluding that the offense involved more than 10 victims.  This would establish a Total Offense Level of 19 and a resulting guideline range of 30-37 months.  The parties' plea agreement did not encompass this enhancement, and calculated a Total Offense Level of 17.[1]  In the event that the Court adopts the view of probation, the parties request a *Fernandez* departure to give

---

[1] In paragraph 88 of the PSR, the Government sets forth the rationale for not including this 2-level enhancement in the plea agreement.

2

effect to the plea agreement, thereby lowering the advisory guideline range to 24-30 months. See PSR at ¶102.

III. **CONSIDERATON OF THE STATUTORY FACTORS UNDER 18 U.S.C. 3553(a) SUPPORT A SENTENCE OF PROBATION**

The sentence that Mrs. Gardner ultimately receives must comply with "the four identified purposes of sentencing: just punishment, deterrence, protection of the public, and rehabilitation." Dean v United States, 137 SS. Ct. 1170, 1175 (2017); see also Gall v United States, 552 U.S. 38, 50 (2007). In determining what sentence will best achieve these statutory purposes of sentencing, the Court must consider all of the factors set forth in 18 U.S.C. §3553(a)(1)-(7). When considering each of the statutory factors under §3553(a), the U.S. Supreme Court has made clear that the sentencing process should focus carefully on the individual, and not merely on the crime itself. "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue. Underlying this tradition is the principle that the punishment should fit the offender and not merely the crime." Pepper v United States, 562 U.S. 476, 487-88 (2011).

Mrs. Gardner is a loving and caring daughter, wife, mother and grandmother, who has devoted her life to her family. Aside from her conduct in this instant matter, the defendant has lived an otherwise law-abiding life, always placing the needs of others before her own. There is no rational explanation to account for her aberrant conduct of diverting funds from her employer for her own personal use. During the presentence interview, Mrs. Gardner explained that she started using her own credit card to make business purchases and then

reimbursed herself for the company expenses.  But as time went on, she began to comingle her business and personal purchases, and then started to reimburse herself for items that she was not entitled to.  And over the course of engaging in this conduct for many years, Mrs. Gardner misappropriated hundreds of thousands of dollars from her employer.  In some way, it was a relief to her when the conduct was finally discovered by her employer because she could finally stop the deceit and dishonesty that was plaguing her conscience.  This was simply not the person who she was but she didn't know how to stop the behavior without setting off warning bells and alarms.  Although Mrs. Gardner realizes that she must now face the consequences of her criminal actions, at least she's been liberated from the guilt that was overwhelming her.

Counsel hopes this sentencing submission makes clear that Mrs. Gardner's criminal conduct is behind her, and that she is focused on moving forward with her life, particularly sacrificing herself for the needs of her family.   Based upon the many conversations with Mrs. Gardner, counsel is extremely confident that nothing like this will ever happen again. Mrs. Gardner's letter to the Court, which is attached to this memorandum, emphasizes her remorse and embarrassment for engaging in this behavior and further underscores her commitment of wanting to give back to the community that she has wronged. See **Exhibit A**.

In fashioning an "individualized" and just sentence, 18 U.S.C. §3553(a) directs the Court to consider many factors, including the history and characteristics of the defendant, her offense conduct, and whether there are other mitigating circumstances that would warrant a departure or non-guideline sentence.  In this case, counsel respectfully submits the Court should consider Mrs. Gardner's extraordinary family circumstances and the hardship it would bring to her husband and mother if a sentence of incarceration was imposed.  Accordingly, a

sentence below the recommended advisory range would be sufficient to meet the goals of sentencing in this case. Mrs. Gardner is asking the Court to impose a sentence of probation, along with any other special conditions deemed appropriate and necessary to assist with her rehabilitation, including payment of a sizeable restitution order.

### A.   History and Characteristics of the Defendant

Alicia Gardner was born in eastern Connecticut to hard-working parents who provided for their children's needs. But in order to pay the bills, her parents were usually at work when Alicia and her sister arrived home from school and got off the school bus. To avoid coming home to an empty house the girls would walk next door to their maternal grandparent's home where they would do their homework and talk about the events of the school day. Alicia recounts those days that she spent with her grandparents as being some of her fondest memories growing up.

The defendant's childhood is described in the PSR as being fairly uneventful other than her parent's separation. After their initial split, the parents reunited for a brief period before deciding to permanently sever the relationship and go their separate way. Alicia was a teenager at the time and recalls coming home from school one day and discovering that her father had moved out of the house for good. She describes that day as being the darkest memory of her childhood years.

On the positive side, around this difficult time in her life Alicia had begun dating her future husband, Marc, who was one year her senior. They dated for approximately two years before Alicia became pregnant during her junior year in high school. Marc was close to graduating so the couple decided to tie the knot after his graduation. Although Alicia was a

decent student, school was no longer a priority for her so she dropped out and prepared for the birth of her first child.

Marc and Alicia have been married for over thirty-four years and have brought four children into this world.  The couple decided early on that Alicia would remain a stay-at-home mom while the kids were young and Marc would be relied upon to be the bread winner for the family.  Upon graduating from high school Marc landed a good job at a copper manufacturing company, Freeport McMoran, where he remained employed for approximately 32 years, ultimately achieving the position of Rod Mill supervisor in charge of all three shifts of the plant.

However, in the Fall of 2019, as the Covid pandemic began to surface in China, the American manufacturing sector started to experience a disruption in its global supply chains. The trickledown effect of this disruption caused massive layoffs to millions of workers and became the impetus of an economic recession that impacted many corporations, including Marc's company which decided to permanently close its doors and shut down its operation. This was a devastating blow to the family's finances, and to compound the problem, Marc suffered a debilitating stroke in late December of 2019.  Suddenly, he found himself laying in a hospital bed with his devoted wife by his side, not knowing what his future would hold. Thoughts of dying raced through his head.  On the other hand, if he survived, what would his life be like?  Would he be paralyzed (fully or partially) or might he maintain his mobility, and would his speech and memory remain intact or would there be residual effects and/or limitations to his cognitive mental processes?  These were questions that remained unanswered for many weeks and months as doctors tried to access the long-term effects of the stroke.

Meanwhile, as Mrs. Gardner struggled to cope with her husband's sudden illness, she also had to deal with her mother's deteriorating mental health. Around 2017, prior to Marc's stroke, the couple had decided to move Mrs. Gardner's mother into the family home because of their concern that she was showing the onset of dementia. Sometime in 2011, the defendant's mother suffered a brain aneurysm that resulted in traumatic brain injury. And as she got older, her mental condition worsened to the point where she couldn't be left alone without serious concern for her wellbeing. So, when Marc's stroke occurred, it became a double setback to Mrs. Gardner. Bouncing between the hospital/rehab facility to see her ailing husband, and her home to care for her elderly mother became quite a juggling act and most onerous to Mrs. Gardner. Notwithstanding the challenges associated with this ordeal, Mrs. Gardner performed her stressful responsibilities with dignity and grace, showing an inner strength to her other family members. Many have written letters of support for Mrs. Gardner, acknowledging their gratitude and admiration of her unconditional love and devotion to her family.

## 1. Departure Ground or Non-Guideline Variance re: Extraordinary Family Circumstances

Mrs. Gardner's extraordinary family circumstances is part of her history and characteristics and therefore relevant to the Court's decision of where to sentence her within the applicable Guidelines range. Under the Sentencing Guidelines, a defendant's "family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted." U.S.S.G. § 5H1.6. However, where family circumstances are extraordinary, the sentencing court has discretion to depart below the applicable sentencing range. In evaluating whether a downward departure is appropriate, the Court must take into account

the absence or presence of adults who can step in during the defendant's incarceration to assist with caring and providing for the defendant's dependents.  This is a central part of the extraordinary family circumstances inquiry.  United States v. Huerta, 371 F.3d 88, 95 (2d Cir. 2004) (per curiam); see also, United States v. Galante, 111 F.3d 1029, 1036 (2d Cir. 1997); United States v. Alba, 933 F.2d 1117, 1122 (2d Cir. 1991) (all upholding such downward departures).

Mrs. Gardner is the sole caretaker for her husband and mother.  According to APRN Susan Taboada, Marc Gardner's "post stroke continues to require assistance with activities of daily living such as bathing and dressing, as well as IADLs [instrumental activities of daily living] such as food preparation, laundry, medication management, management of bills and finances, upkeep of home and all transportation needs."  Exhibit A.  There is no one from her immediate or extended family who can provide the ongoing intensive care and responsibilities that her husband's condition requires.  The other family members either work full-time or live too far away to be able to check on him regularly.  Moreover, since Marc's return home, he experiences reoccurring seizures that prevents him from driving and/or traveling by himself to weekly doctor's appointments.  Mrs. Gardner's presence is necessary so she can provide a prompt and immediate response to the seizure.

As to Mrs. Gardner's mother, she suffers from dementia which interferes with her daily life and limits her ability to care for herself.  Although the defendant's mother can be left alone and unattended for short periods of the day, she is ill-equipped to perform the necessary daily functions of a healthy adult, such as cooking, cleaning and medication management.  Her care falls exclusively in the hands of Mrs. Gardner.

In Mrs. Gardner's case, the Court must balance her extenuating family circumstances, against the seriousness of the crime and the need for specific and general deterrence. As the Court can see, from the many letters which are attached to this memorandum, Alicia Gardner performs her caretaking duties in a selfless manner, and while doing so, casts a shining light to the darkness that surrounds her husband and mother. And she shows only strength and harbors no bitterness to the heavy burden that's been thrust upon her daily life. This is the true version of the woman for whom many friends and family members have written letters of support.

In United States v. Selioutsky, 409 F.3d 114 (2d Cir. 2005), the Second Circuit indicated that within the post-Booker sentencing regime, a district court could impose a Guidelines sentence with a family circumstances departure based on sufficient findings or, alternatively, impose a non-Guidelines sentence based on the same considerations of family circumstance. Id. at 120. On balance, based upon the facts of Mrs. Gardner's well documented and unique family circumstances, counsel respectfully submits the equities weigh in favor of a departure or variance below the guideline range set forth in the PSR. See PSR at ¶85. The defendant's husband's and mother's well-being deserve consideration for a reduced sentence. A sentence within the guidelines would most certainly cause irreparable harm to Marc and his mother-in-law who would likely be required to enter long-term care facilities. Accordingly, the need for justice can be met with a sentence of probation.

## B. The Kinds of Sentences Available

A violation of 18 U.S.C. §666(a)(1)(A) is classified as a Class C felony under 18 U.S.C. §3561(c)(1), which allows the Court to consider a sentence of probation of not less

than 1 nor more than 5 years.  However, in order to achieve this sentence, the Court must depart from the defendant's current guideline range, which places her in Zone D.  The Supreme Court has emphasized that a non-custodial sentence is indeed "punishment" under our federal sentencing laws.  See Gall v United States, 552 U.S. 38, 48-48; see also ABA Standards on Criminal Justice, Sentencing 18-6.4(a), p. 227 (3rd ed. 1994)("A sentencing court should prefer sanctions not involving total confinement in the absence of affirmative reasons to the contrary.")

### C.  Protecting the Public of Further Crimes

In considering the need to protect the public from further crimes of the defendant, this Court must balance Mrs. Gardner's lack of a prior criminal history with the circumstances that caused her to commit this offense.  She is 51-years old and has devoted her life to her family and helping others in need.  One of Mrs. Gardner's close friends, Ruth Wanko, describes the qualities of her friend as selfless and caring, and that she tries to preserve the dignity of others through her actions.

As youngest daughter, Kelsey Gardner, writes, in part, in her letter to the Court, "through this experience, I have learned that she [her mother] is also human.  A human who has proven to be able to accept guilt, learn from her mistakes, and move forward as a better person…I have witnessed my mother become the strongest version of herself.  My mom has accepted her responsibility and demonstrated remorse and guilt in conversation with me and others.  I believe my mom has learned from her actions and I believe she continues to learn every day."

Her loving husband, Marc, writes, in part, "I have never lost hope in my wife…I am proud of the woman my wife continues to become every day…Alicia continuously shows her

loved ones that she will put all of us before herself.  She supports our children through their own life's journey's ups and downs."

These sincere and heartfelt testimonials support the argument that Mrs. Gardner is a caring and nurturing individual who does not pose a risk to the community if she received a sentence of probation.

### D.  Just Punishment

The concept of "just punishment" under §3553(a)(2)(A) refers to the need for a defendant's punishment to reflect the gravity of the crime.  Here, counsel submits that just punishment can be achieved with a sentence of probation.  Without diminishing the seriousness of this offense, the Court can see that Mrs. Gardner is remorseful for her conduct and shameful of the embarrassment her actions have brought to the family. The defendant's recognition of her criminal behavior produces a compelling argument that she will refrain from any future wrong doing.   Accordingly, a sentence approaching the PSR's advisory Guideline range will have no greater deterrent effect than a sentence of probation.  The Court can fashion such a sentence and still achieve the goals of just punishment and promoting respect for the law.

### E.  Restitution

There is a sizeable restitution order that will be incorporated into Mrs. Gardner's sentence.  As part of the plea agreement the defendant has agreed to forfeit the funds in her 401k retirement account to GHMC.  The sum of this retirement fund is in excess of $100K. Additionally, Mrs. Gardner owns her residence jointly with her husband, Marc, and upon information and belief, there is approximately $200K of equity in the value of the home.  It is

anticipated that the Government will place a lien onto the property to secure a portion of the home's equity towards the restitution.  Prior to Marc Gardner's stroke, Mrs. Gardner and her husband had also contemplated liquidating some of his retirement funds to pay down the restitution.  Currently, the retirement account holds approximately $300k.  However, after her husband's stroke, Mrs. Gardner became concerned that if something were too happened to her, Marc would need the money in the retirement account to cover his living costs and expenses.  Moreover, if the retirement account was to be liquidated to pay off the order of restitution there would be a significant penalty that Marc would have to pay for early withdrawal of the funds, aside from any tax implications that flowed from the added income.  These considerations would further reduce the funds that are presently in Marc's retirement account and could be paid towards the restitution.  Notwithstanding the financial hardship he would likely face in retirement, Marc Gardner has expressed his willingness to forfeit the retirement funds to better his wife's position at sentencing.  However, taking all of the financial issues into consideration, Mrs. Gardner has elected not to ask her husband to liquidate the account.  She does not believe Marc should be punished or held responsible for the sins that she's committed.  Accordingly, the balance of the remaining restitution must come from the income that Mrs. Gardner will generate from the home décor store she continues to operate.  This will be a tall order, but one that Mrs. Gardner is nonetheless prepared to face on her own.

## III. CONCLUSION

As cited above, a fundamental principle of sentencing is that a court "shall impose a sentence sufficient, but not greater than necessary" to meet specified sentencing goals, including the goal of "just punishment."  *See* 18 U.S.C. §3553(a).  Mrs. Gardner understands

that she stands convicted of a serious federal crime and that this conviction carries a heavy burden as she moves forward with any future job that she's able to secure. The arguments advanced in this memorandum for a sentence of probation in no way seeks to diminish the actual seriousness of the crimes for which she has been convicted. Rather, Mrs. Gardner's background, including her lack of criminal history and the extraordinary family circumstances, are factors for the Court to consider for imposing a sentence below the advisory Guideline range. For these reasons, a sentence of probation would be a sufficient and just sentence in this case.

<div style="margin-left: 40%">

Respectfully submitted,
The Defendant-Alicia Gardner


By: */s/ William H. Paetzold*
William H. Paetzold
Moriarty, Paetzold & Sherwood
2230 Main Street
Glastonbury, CT  06033
Tel. (860) 657-1010
Fax (860) 657-1011
Federal Bar No.: ct10074
whpaetzold@mpslawfirm.com

</div>

## **CERTIFICATION**

This is to certify that the foregoing was filed electronically on October 20, 2021 to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

<div style="margin-left: 40%">

*/s/ William H. Paetzold*
William H. Paetzold

</div>

# EXHIBIT A

Letter from APRN Susan Taboada

**Patient's Name:** Marc W Gardner   **MRN:** 2000169597   **D.O.B:** 5/19/1969



# Hartford
# HealthCare
### Connect to healthier.™
Hartford Hospital Neuroscience Institute Outpatient Center
85 Seymour St.
S 815
Hartford CT 06106-5527
Phone: 860-972-3621
Fax: 860-545-5003

June 23, 2021

Marc W. Gardner

Patient:       **Marc W Gardner**
Date of Birth: **5/19/1969**
Date of Visit: **6/23/2021**

To Whom It May Concern:

It is my medical opinion that Marc Gardner post stroke continues to require assistance with activities of daily living such as bathing and dressing, as well as IADLs such as food preparation, laundry, medication management, management of bills and finances, upkeep of home, and all transportation needs.

If you have any questions or concerns, please don't hesitate to call.

Sincerely,

Susan Taboada, APRN
860-972-3621

CC: No Recipients

Electronically Signed by: Susan Taboada, APRN

**Encounter Date:** 6/23/2021                    Page 1 of 1

# EXHIBIT B

Letter from Alicia Gardner

Dear Judge Bolden,

My name is Alicia Gardner and I am the defendant in this case. I have put much thought into what I wanted to say to you and my family about what I have done to get myself here.

I will begin by saying that if I could go back and change my behavior to not land me here in this position I certainly would in a heartbeat. I am very sorry for what I have done and I know that you do not know me but this is very out of character for me. My nature is to help people in any way that I can. When my grandparents were alive I did their shopping, yard work, cleaning anything I could possibly do to help them as I feel they were the ones most there for my sister and I when we were growing up. They were the constant that we needed in our everyday lives. I love helping people as there is no better feeling than knowing that some of your day helped someone else. For these reasons Your Honor it does not make sense that I sacrificed myself and who I am but I did. I am a hard worker. I put my heart and soul into everything that I do, I always jump in with two feet. I am not afraid to get dirty and there is no job that I will not tackle. During my time at Salem Village and St. Marys I spent many days working outside landscaping putting in new bushes, raking, mowing and many days inside painting and keeping the buildings in tip top shape. The appearance of a property is very important not only for the residents living there but also for the prospective residents who would visit the buildings looking for housing.

I am extremely remorseful that my time at these two properties is going to be remembered for my decisions to misappropriate funds  rather than what I accomplished while I was there, but it is understandable.  I cared deeply for many of the residents there, helping them when they could not find anywhere else to live or even transporting them to their doctors visits. I wish I could give you an explanation such as I am a gambler who was feeding my gambling habit or I am an addict who needed the money for drugs, however that is just not my story. My story is that I am a wife and a mother of four beautiful children and four amazing grandchildren. My story is that there is nothing I would not do for my family. They are the reason I feel I was put on this earth, they are my purpose. I believe I am a good wife, mother and grandmother. I believe that my desire to keep them all safe and out of harm's way has contributed to me being in this situation. This is my fault no one else is responsible for me being here except myself, I believe my desire to protect my family clouded my judgment many times. My two Sons Bryant and Andrew are both addicts. I would do anything to protect them and have them not end up a statistic. I have followed my son out to Cleveland where he was living and chased him down the streets of Cleveland to get him into Rehab. I believe if I had not done so he would not be alive. I have removed my youngest granddaughter from my son Bryants care in order to keep her safe. Both my boys are good people who have lost their way several times in their lives and they will continue to struggle with this addiction for the rest of their lives. I tried to do whatever I could to protect them but in the meantime sacrificed my morals and my integrity. I misappropriated these funds at this property for the sake of my family and that is wrong. I am sorry Your Honor, I wish I could go back and do things differently but I cannot. I promise you that I have done good in this world and will continue to work hard everyday to give back. I get involved with groups who are out there to help others in need. I attend The Matt's Mission Walk every year and I attend Community Speaks out meetings whenever I can in order to stay involved with Families like ours.

In December 2019 my Husband, the love of my life, suffered a major stroke. We didn't know whether he would make it through this time or not. They said he may never walk

or talk again. My husband has worked so hard to recover. Although the stroke was on the right side of his brain it has affected the left side of his body. Along with no use of his left hand he has major weaknesses on his left side. He is on Full time disability and cannot work. He cannot manage his own medications, and needs help with daily activities such as dressing, cooking, cleaning, bathing etc. In addition he has developed post stroke seizure disorder which has caused him to suffer from seizures a few times a week. Due to this condition he cannot drive.

My mother Paula has also lived with us since 2017 because she suffered from a brain aneurysm which put her on disability. She cannot live alone as she is not safe all by herself. My mother also needs help with cooking, cleaning, bathing, dressing and also cannot drive. Prior to my mother moving in with us she would leave the stove on, her apartment was filthy and she had severe changes in her mental status which caused her to become very angry. In addition we believe she has dementia as she does not remember details of her day to day activities and cannot tell you at the end of the day what she did that day.

Judge Bolden I am very embarrassed and remorseful about what I have done. I have caused my Husband and children embarrassment and shame. I have always taught my children to be honest and yet look at what I have done. I have not set a good example and I have to live with that for the rest of my life. I am very sorry.


Respectfully,


Alicia Gardner

# EXHIBIT C

Other Letters of Support

Dear Judge Bolden,

I first met Alicia in 1986 in our accounting class at Norwich Free Academy. When she walked in that classroom my life changed forever. My name is Marc Gardner, and I am Alicia Gardner's husband. Alicia and I have been married for 34 successful years. We have four children and now are blessed with four grandchildren. While my life began with Alicia 34 years ago, I know that we are still just at the beginning.

In 2018 my wife, Alicia Gardner, confided in me about her actions and expressed both remorse and regret for her lapse in judgement to do the right thing. After learning of Alicia's actions, I have never lost hope in my wife. Alicia has integrity and knows right from wrong. I understand that Alicia has accepted responsibility and I do believe that she is capable of doing better and learning from her mistakes. I am proud of the woman my wife continues to become every day. I have witnessed my wife's remorse for those she impacted, and it is very evident that she would take it all back if she could. Your honor, please consider Alicia Gardner as an individual who has taken responsibility for her actions and will make restitution as seen fit. I wish that I could go back in time and recognize what was happening.

In December 2019, I suffered a major stroke that has impacted the function of my left hand. Alicia assists in my daily tasks, such as driving me to medical appointments and activities of daily living. Alicia also takes care of her mother who suffered a brain aneurysm in 2011 and has a traumatic brain injury. Alicia continuously shows her loved ones that she will put all of us before herself. She supports our children through their own life journey's ups and downs. Alicia has always stood by the side of our two sons who struggle with drug addiction, even taking in her grandchild temporarily at one time.

Alicia maintained her direct properties in a stable environment. Despite challenges Alicia faced to achieve the facility maintenance needed at times, Alicia was persistent, and it was important to her to advocate for the tenants in these situations. It was her priority to ensure snow removal was taken care of in a timely manner and tenants were living in adequate living environments, amongst other tasks. In my opinion, Alicia went above and beyond at times to provide added perks to residing at Salem Village. Alicia began a Property Garden Club where residents could plant flowers and maintain a vegetable garden. Alicia did this so that residents could reap the benefits of the harvest. Alicia also hosted property cook outs, and Christmas parties for all residents. Some tenants developed strong relationships with my wife and enjoyed her presence. Many audits were passed by Government Agencies and Management, which can be supported from a recent report where HUD outlines these positive attributes.

Your Honor, I am please asking you to consider Alicia be held responsible for her actions with something other than incarceration which would take from care she provides not only for me but her elderly Mother and our sons. With all my gratitude and respect, I thank you for your consideration.


Best Regards,


Marc Gardner

8/8/2021

Richard C. Peterson

102 Duchess Lane

Syracuse NY 13219

(860) 885-4345


Dear Honorable Judge Bowden

My Name is Richard Peterson, I am writing this letter on behalf of my daughter Alicia Gardner. Who has been charged with Embezzlement.  Alicia is my oldest of my two children. I would like to provide some insight as to the character of my daughter Alicia.  When Alicia was little, she fun, funny, well liked, caring, compassionate and the caretaker.  She did well in school and became a mother at a younger age and met this challenge with grace and determination. When I learned that Alicia was charged and found guilty, there was no one more surprised than I was.  That is not because I buried my head in the sand or lived in denial. It was because I know my daughter, she simply is not that type of person.  This behavior was not in her character and very much an anomaly.

Alicia's mother and I divorced when she was 12 years old, she became pregnant at 17 years old and still in high school, but she did complete high school. I often wonder being a divorced father and not being a complete family during those adolescent years, would it have made a difference in the poor decisions your children make. Was there lack of guidance, openness that Alicia could come to me with problems. Alicia's mother and I were able to remain friends and put our personal differences aside when it came t our children. I often feel guilty as I was not the father more present in Alicia life.   Alicia has been and very involved mother, daughter and grandmother and has worked very hard. She has a good heart, overwhelming kindness and generosity.  She is the first to step forward and lend a hand.   She has struggle with family situations that have been extremely hard and stressful, I am unsure if this had led to her poor decisions and lack of judgement.  Alicia is currently caring for her disabled husband and mother, and I am concerned for who will be caring for them if she must serve prison time. Her husband has had 2 strokes and suffers from seizures he is no longer able to work and requires assistance with activities of daily living.  I believe that Alicia could better the community but doing community service and helping the less fortunate

I believe that Alicia is extremely remorseful for her lack of judgement and poor decisions.  Alicia is an active member in society and has never had any other charges against her.  I believe after many discussions that she will learn from her mistakes and prove to be the person I know her to be

Thank you Sincerely

Richard C Peterson

Honorable Bolden,

In grade school I had to write a letter about my biggest influence in life. I wrote about my mom, Alicia Gardner. I wrote how I wished to be just like her when I grew up. Fifteen years later, I still stand by those words I wrote as a 10-year-old girl. My name is Kelsey Gardner, Alicia's youngest daughter.

Growing up I would describe my mom as dedicated, loving, and family orientated. To the Gardner Family, she was and is our rock. My mom is the person we can all count and depend on. She is a mom that always shows up for each of her children. As a foster parent myself, I realize I am lucky to have a mother like her. Not everybody is as fortunate to have a mom that they don't have to question if they will love and support them unconditionally.

As a 25-year-old newlywed woman, I still need my mom. I strive to be a woman of grace, humility, and kindness, a woman like my mother. My mom is still the person I turn to in my times of needs. She offers me advise, comfort, and guidance when I need it. My mom is my role model. Today I would describe her with all the same adjectives as before, but I would add admirable. It's easy to place our moms on pedestals. I am certainly guilty of doing so. However, through this experience, I have learned that she is also human. A human who has proven to be able to accept guilt, learn from her mistakes, and move forward as a better person. What more could I ask for in a role model?

Since learning of this case, I have witnessed my mother become the strongest version of herself. My mom has accepted her responsibility and demonstrated her remorse and guilt in conversations with me and others. I believe my mom has learned from her actions and I believe she continues to learn every day.

I remember growing up and watching my mom work at Salem Village. As we all know, she has certainly made some sever mistakes, but I don't believe her time there was all bad. I would often visit my mom at work during the summer and occasionally I would see a tenant in the office or the community room. With every memory I have I see happy and smiling faces. The tenants I saw would tell me how sweet my mother was and how much they loved her. My mom even had asked one of the women if I could interview her for a college paper. The kind woman graciously allowed me to visit her home and learn about her life journey. I recall joining the tenants at summer picnics and holiday parties. My mom would host the tenants at the community room and provide a dinner for the residents. She used to tell me that she did it because for some residents it would be the only holiday meal that they'd share with others. It was important to Mom that every resident received a gift at the holiday luncheon. I would help pass the gifts to each table. These events became a tradition of my childhood, and it was there that my mom taught me how important it was to give back to our community. I know it's easy to remember all the bad, but she definitely brought some light to her employer as well. I saw a new side of my mom after she departed from Salem Village. I saw a woman that showed sorrow and empathy for those involved. She knew it was time to accept what was to come. To me, she is a woman of grace. I admire my mother.

Amid this case, I could be witnessing a person who feels bad for themselves and makes this the focus of their life. Instead, I have been blessed to watch my mom selflessly take care of my dad, who is one hundred percent reliable on her after his stroke. I watch my mom willingly put her own personal feelings aside to help plan and host the wedding of my dreams. I watch my mom care for her own mother without asking anything in return or anything from anyone else. I watch my mom love her grandchildren and make sure they know it daily regardless of her life crumbling before her. I watch my mom put everyone else's feelings and concerns above her own because that is what they need. I watch my mom determined to be strong and resilient regardless of her fate. I watch my mom make the choice not to be bitter but choose to make the most of her time and be the best person she can be, while she still has the chance.

I thank you for your time and your consideration of this letter. I stand by my mother's side in her time of need as she has done for me countless times not just because I love her, but because she deserves it more than anyone else I know.

With Gratitude,

*Kelsey Gardner*

Kelsey Gardner

October 5, 2021

Judge Bolden,

My name is Peter Maurice, I am Alicia Gardner's son-in-law. I have known Alicia since 2016 when I was welcomed with open arms to the family. Alicia and Marc Gardner have always gone above and beyond to make me feel included and loved, just as one of their own. I've always known Alicia to care genuinely and love deeply. She is a strong, family-orientated woman.

Since being part of the family, Alicia and Marc have become very important to my support system and I truly look up to them as parents. I admire Alicia for all that she is going through right now and how even on the hardest days she puts others before herself. She shows this in caring for Marc every day. She has also supported my wife and I through fostering our niece (her grandchild), and I know we would not be where we are today without her guidance and advice. Alicia is dependable, caring and shows regret for her choices.

After learning of Alicia's mistakes, I was taken back by how out of character the decisions were for her. Alicia is one of the most strong-willed people I know, and I do believe that she is remorseful of her actions, and she has learned from them. I will continue to support Alicia, as all her family and friends do. I hope this letter supports Alicia's good character and is considered in the outcome of this case. Our family would not be the same if it were not for Alicia, who is often the strongest glue that holds us together.

Sincerely,


Peter Maurice

**William H Paetzold**

| | |
|---|---|
| **From:** | Kirsten Eaton <kirsteng18@yahoo.com> |
| **Sent:** | Monday, October 18, 2021 2:01 PM |
| **To:** | Mom |
| **Subject:** | Letter |

Dear Judge,

I am writing this letter to you regarding my mom Alicia Gardner. I am Alicia's oldest daughter Kirsten.

For 34 years I have seen my mom always put everyone else before herself. Growing up my mom was a stay at home mom for many years. Being a stay at home mom has many advantages and disadvantages but it was everything to my mom and she always made sure her family was taken care of. Being a young mom and wife she herself was learning things about parenthood, marriage and life in general. Although she was still learning, I must say she did a pretty awesome job!

My mom has experienced many ups and downs in her life, but she has always seemed to get through and come out even stronger. Some of these experiences include the death of her grandparents at a young age, her parents divorcing when she was a teenager, becoming a young mom to 4 children, marrying the love her of life, thyroid cancer, her mom becoming ill with a brain injury, and most recently my dad suffering from multiple strokes and having his normal everyday life change instantly. Life has certainly thrown many curveballs my moms way, but she has always been the rock and glue that holds our family together. My mom plays so many important roles such as a wife, mom, meme, daughter, sister, cousin, and friend. My mom is and has been a very hard worker who has always been determined to put others before herself. She has always put herself last.

Through the many years that my mom worked at Salem Village, I witnessed many things that she did for the property and the residents who called it their home. Salem Village and the residents became a second family to my mom. My mom always made sure the property looked beautiful, she would decorate for Christmas including getting a fresh cut tree that she would string lights on and decorate herself, summer cookouts, and holiday parties. My mom made sure to make things nice for everyone who lived there. My mom would go above and beyond. There were many residents who didn't have family or could not drive and my mom would make sure they were taken care of when they needed something. She would check on residents before and after snow storms, bring meals if a resident was not feeling well, and even give rides to the grocery store or the bank if a resident needed to get somewhere that didn't drive. The residents became family to Alicia and Alicia became family to them.

My mom has made some mistakes in her life, like the one that brings her here today, but at the end of the day that is just what it is, a mistake. A mistake that she should be held responsible for in some way, but I please ask for you to keep fresh in your mind that she has a husband, 4 children, 2 son in laws, and 4 grandchildren who all hold this woman, my mom very near and dear to their hearts, and who are Alicia's whole entire world.

I truly appreciate you taking the time to read my letter.

Thank you,
Kirsten Eaton


<u>Sent from Yahoo Mail for iPhone</u>

**William H Paetzold**

| | |
|---|---|
| **From:** | Kirsten Eaton <kirsteng18@yahoo.com> |
| **Sent:** | Monday, October 18, 2021 2:59 PM |
| **To:** | Mom |
| **Subject:** | Adams letter |

Dear Judge,

My name is Adam Eaton and I am Alicia's son in law. I have known Alicia for just about 16 years.
Ever since I met Alicia, I knew that family was everything to her. Her pride and joy was having her family together any moment that it was possible. To this day that still holds very true. Alicia is a loving, caring, and strong person who has a huge heart. She is a hard worker who is dedicated to always helping others and putting peoples needs and wants well before her own.
My mom and dad were happy residents of Salem Village when Alicia worked there. Alicia had a very significant part in my parents being able to move there. Alicia was always doing nice things for the residents that lived at Salem Village. There was always freshly planted flowers in the spring and summer, patio furniture in outside sitting areas so residents could enjoy each other's company, and holiday dinners are just some of the things she did to put smiles on the residents faces. Although these things may seem small, it brought absolute happiness and joy to the residents including my parents. Alicia made so much possible at Salem Village. Since Alicia has left, my mom who at this present time lives there has stated that the property and care from management has gone downhill significantly. This is a very disheartening thing to hear.
Alicia continues to be strong while caring for not only herself, but her whole family. She is always there and willing to help in any way that she is able.

Thank you for taking the time to read my letter about such an important person not only in my family but to many others as well.

Thank you

Adam Eaton

Sent from Yahoo Mail for iPhone

I am Bryant Gardner, eldest son of Alicia Gardner. I also have three siblings, an older sister, a younger brother and a younger sister.

My mother has always been and will always be the rock and glue that holds our immediate family together. Which has recently been added to with 4 little grandchildren.

My mother was a stay at home mom until she was comfortable heading back into the workforce. Meanwhile our father worked tireless hours on the third shift just to simply make sure to provide and allow them both to be able to attend and coach the endless sports and dance practices and games. On Top of the after school activities we all were involved in.

My mother has never stopped loving us unconditionally with all of her big heart. I had an upbringing that will always be a positive reminder of what I need to give my own daughter.

I hope my mother is able to get her second chance to do right as most are given in a courtroom, so she can prove she's learned her lesson. I have never seen so much regret in my mother than I have recently, so from a son I know she's ready and also hopeful to get this opportunity.

I have also watched my mother create her own business to try nothing but her best to make her own living. What i have seen in my mother in this aspect has been nothing but inspirational and a desire i would want for myself as I'm currently attempting.

Bryant Gardner

860-457-8916
bryant3257@gmail.com

Anthony W. Izzarelli
45 Terry Road
Griswold, CT 06351
(860) 608-4154


August 8, 2021


RE: Alicia Gardner


The Honorable Judge Bowden,

I, Anthony Izzarelli, have known Alicia as a very dear friend for the past fifteen years. I was both troubled and surprised to hear about her case as she has always been an honest, upstanding person. It is for this reason I am happy to write a letter of reference for Alicia regarding the matter. I understand the seriousness of this matter, however, I am hopeful the court will show some leniency.

I have always looked at Alicia and her husband Marc, as a second set of parents. Alicia has always supported me in important life decisions and has been a shoulder to cry on in less than fortunate circumstances. I was able to lean on Alicia for love and support during my wife's cancer diagnosis. I have also always looked at Alicia as a model parent, which I have continued to look up to in the raising of my own children. Raising teenage girls is not always an easy task, however, I am grateful I have been able take examples set by Alicia and her husband Marc, as they have raised four children themselves.

Alicia is a hardworking, supportive wife, mother, grandmother and friend whose family needs her to be present. Alicia, cares for her husband who had fallen ill about 18 months ago due to a massive stroke, Marc continues to suffer seizures on a regular sometimes daily basis. Alicia's care for Marc is critical to his day to day living, both physically and mentally.

Most recently, Alicia has started her own business and is contributing to society in a more than positive manner. She has always shown love and support for me and the members of my family as we were apart of hers.

Your Honor, it is my sincere hope the court takes this letter into consideration at the time of sentencing. Despite the circumstances, I still believe Alicia Gardner to be an honorable, loving, caring, and kind individual. Thank you for your consideration.

Sincerely,


Anthony W. Izzarelli

Susan Bialowas
108 Bergendahl Drive
Griswold Ct. 06351
Majminis@gmail.com

August 8, 2021

To the Honorable Judge Bowden,

I, Susan Bialowas write this heartfelt letter regarding my dear friend, Alicia Gardner. Please allow me to share my thoughts. We have been friends for ten plus years. During which time, we have become very dear friends. Alicia is kind, compassionate, and truly a caring person. Myself and my husband are aware of the allegations that Alicia faces.

I, pray and plead for leniency for my dear friend, Alicia is a hardworking mom, wife and grandmother, whose family needs her now more than ever, as her husband Marc has extensive health issues due to strokes and seizures in the past 18 months. She is also helping her daughter Kelsey raise their granddaughter.

Alicia has started her own business and is a making a positive contribution to society while also caring for her family. I truly feel that Alicia will continue to be the best she can be.

Please your Honor take this plea into consideration when deciding Alicia's fate.

Thank You.
Susan Bialowas

July 31,2021

To whom it may concern,

I met Alicia when she was 10 years old when I started dating her uncle.  I have always know Alicia to be very caring, loving, kind and supportive woman.

Alicia is a wonderful and supportive wife to her husband Marc, who suffered a significant stroke on December 27,2019.  Alicia's determination to help Marc in his recovery is remarkable.  Marc has had several set backs including seizures and Alicia is always there to support him and cheer him on.  It is admirable to see Alicia's care for him.

Alicia is also a very supportive mother to her four children and their families.  Always there to help with anything that life has thrown their way.  Alicia is always there to help with the care of her four grandchildren.

Alicia along with her sister help with the care of their disabled mother.

Please feel free to contact me if you have any questions.

Sincerely,

Christina Peterson

## Heather Miller

266 Preston City Road, Voluntown, CT 06384 · hmiller123@icloud.com

September 3, 2021

To Whom it May Concern:

I have had the pleasure of knowing Alicia Gardner for 45 years. During the years of our friendship, I have known Alicia in many capacities. I met Alicia who was my sister's dear friend and we became friends shortly thereafter.  We grew up in the same small town and I have known her since childhood for over 40 years. Alicia truly is a caring family person.

During our time together Alicia became a loving wife to husband Marc and mother of four wonderful children.  Alicia over the past few years became a part time caregiver to Marc after Marc suffered a stroke.  She has been patient and strong throughout this situation and assists Marc in any way he may need.  Alicia's children have all done well with the strong parental support given by both Marc and Alicia.  It wasn't always easy for them as children sometimes lose their way.  Alicia's dedication and support has proved that even during difficult times, parents' unwavering love and support can lead children to a successful life and career.  Alicia was always there for her children in their adolescent years.  She attended sports, fundraisers and other events throughout her children's school career.  She was also there assisting with college selection and the stresses associated with children going off to school.  Alicia is also a dedicated grandmother helping out whenever she can with grandchildren and their needs.  Lastly I recall Alicia spending years assisting with the care of her mom after her mom suffered a traumatic brain injury. Alicia and her sister split shifts weekly to take on this magnanimous challenge.

Alicia has demonstrated great caring and kindness throughout her life and our extended lifelong friendship. She is one of the most intelligent, capable, dedicated, generous and caring women that I know. She is always putting her family first in all the circumstances I've seen her in. I feel confident and privileged in saying that she is a wonderful person and friend.

Please don't hesitate to contact me at hmiller123@icloud.com or 860-705-7227 with any questions.

Regards,

Heather Miller

Ruth Wanke
171 Wylie School Rd
Voluntown, Ct 06384

August 10th, 2021

Re; Alicia Gardner

To The Honorable Judge Bowden,

Your honor, I in no way mean to disrespect you or the court in writing this in longhand. In these days of technology I would like to write in a more personal way, concerning Alicia Gardner.

I was born and raised in Greenwich, CT. I worked in banking and at Greenwich Hospital. I've had ties to all levels of society. I was brought up to respect people at all levels of means + success, to the credit of my parents. Having contact with so many people through the years I believe I have sorted through the qualities in people that are important to the good of society and what the world could use more of.

Alicia Gardner is somebody I have always found to be friendly, warm, helpful, truthful and concerned for the well being of others and doing so with love + understanding. She never tried to be better than others. I always know her to be someone that shows all the qualities of being a person I want to call friend. We would find ourselves together sharing heartfelt life conversations along with a giggle or two. Having met through a mutual friend over 25 years ago. My belief + feeling of who Alicia is as a person has never changed, only to believe in her goodness even more as I got to know her better.

Alicia Gardner is an amazing loving wife, mother, Grandmother and daughter. Nurturing, loving and respectful to all. I have watched her strength + grace through many trials through the years. Her joy and pride in her loved ones accomplishments is heartwarming. The health issues of her husband and her mom were enough to break most people yet she was their strength. Being a caregiver during my life I can appreciate how difficult it can be. She has always been a light in their darkness. Real enough to shed a tear, strong enough to keep going. She could let others know the truth she was feeling without having bitterness or pretending she was a superhero — just being real in her feelings. During her husband Marc's many strokes she truly showed she meant her vows of "for better or for worse"

Alicia Gardner's qualities are rare to be seen these days. Selfless, caring, encouraging, preserving the dignity of others are just some of the many.

In any level of humanity there are those that have me doubt their intent, goodness, integrity + truth but not once have I had a doubt of the goodness within Alicia Gardner. I would be more concerned about others taking advantage of her trust and goodness for their own advantage.

Well, as I come to a close, I hope in all my words you can feel my sincerity + belief in Alicia Gardner and show her some of the goodness she has shared during her life with so many.

With respect to you Judge Bowden
I am,
Ruth Wankes

Darlene R Hill
10 So Pine St
Plainfield, CT 06374

August 5, 2021

RE: Alicia Gardner

To whom it may concern:

I have known Alicia as for 30 years.  Our daughters started pre-school together and we quickly became friends.

When our daughters were school together, she and I were active in our daughter's Girl Scout Troup for many years.  Over the years, I attended many of her family birthday parties, bridal showers and the wedding of her daughter.

Alicia is someone I can count on to lend a helping hand when needed.

Sincerely,

*Darlene R Hill*

Darlene R Hill

August 11, 2021

Dear Honorable Boden,

It is my pleasure to give a character reference for my dear friend Alicia Gardner.  I first met Alicia in a networking group I founded in 2018.  She was getting ready to open up her primitive store and our group rallied in support of this hard-working member.  She attended all meetings and provided some great ideas to help the other small business owners grow.

She is sweet, soft spoken and on the shy side but very easy to get to know.  Quickly you came to know that her family is everything to her.

It was not long after meeting her that in 2019/2020 Alicia disclosed her personal situation to me and that she was going to be facing the consequences of her poor decisions.   She felt it was important for me to know as the owner of the networking group that she was a member of.   She made no excuses and clearly appeared to be distraught and embarrassed over it.  Knowing her as I do, it is my belief that her terrible life-threatening/family issues involving her child, impaired her good judgement.  Alicia is a person that is well respected in our community and very kind to all who know her.

As if the court matters were not serious enough, she still is faced with the ongoing struggles of keeping her family together and to then suffer another family setback in 2020.  The main provider of her family and her loving husband suffered a massive stroke which requires continued care and has had many setbacks since.

I am good friends with her daughter as well on a professional level and I can tell you this much about the Gardner Family- they are a strong family that has been faced with serious life challenges then and now.  I see them drawing on their faith and support of their friends to correct what went wrong, heal their family and to rise above-together.

My husband served time and I shared that with members of the Gardner Family.  After 30 years since my husband's poor decision that changed his life forever, we petitioned the court for a pardon, which was granted 2 years ago.   I had shared this with Alicia and her daughter because I wanted to show them that there is no shame in admitting wrong doing, it is how you face the ones you did wrong and fix it to the best of your ability that shows your true character.  To never let a lapse in judgement define you and always rise above it.  I do not say this lightly because their journey from here on out will not be an easy one, but I know Alicia is ready to face it head on and with great remorse.

My friend has my continued prayers and support.  It is my hope that your Honor will have compassion for Alicia and that you will give her the opportunity to make fair restitutions to the families so that all can heal.

Regards,

Dawn Mattos
224 Stone Hill Rd.
Griswold, CT 06351
860-377-1105

From: Shannon Simpson
107 Latham Drive
Griswold, CT 06351
8/12/2021

To whom it may concern,

My name is Shannon Simpson and I am writing in reference to Alicia Gardner.

I have known Alicia for 12 years, when we were introduced by my former late husband and have remained friends since. I believe I am in a position to speak of Alicia's moral character, so I hope this letter is taken into account.

Alicia Gardner is a good person, she has always been kind and generous with others.

Alicia has a strong sense of duty, which applies to her family, friends, and business community. I have always considered her to be respectful and honest.

Most important she always possesses a great deal of integrity and constantly strives to make sure that she is always doing the right thing.

Alicia is the kind of person whom people naturally rally. That in its self has to say something about the kind of person she is, so please let that be a factor.


Sincerely,

Shannon Simpson