UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | : CASE NUMBER 3:21 CR 0090 (VAB) |
| vs. | : |
| ALICIA GARDNER | : FEBRUARY 12, 2022 |

## REPLY TO GOVERNMENT'S OBJECTION FOR SENTENCE REDUCTON

In the Government's response to the defendant's motion for compassionate release/sentence reduction it lists several grounds on which Mrs. Gardner's request should be denied. Counsel for the defendant believes sufficient evidence has been established in its initial submission to grant the defendant's request. However, to further bolster her argument, the defendant provides additional evidence in support of her claim.

The Government's memorandum first addresses a conversation it had with Marc Gardner's physician, Dr. Tsarouhas, whereby the hospital indicated it did not intent to release the patient to his home on Monday, February 14, 2022 without an at-home caregiver being identified. See Govt. Memorandum at p. 5. Instead, the Government indicates that the hospital would release Mr. Gardner to a skilled nursing facility for a period of 3-4 weeks, and that his medical insurance would cover this cost. However, the defendant's youngest daughter, Kelsey Maurice, has submitted a letter to the Court in response to the Government's claims. Mrs. Maurice, who has been the representative for her father's health needs in her mother's absence has spoken to the Case Coordinator at Hartford Hospital's In-patient Rehab Unit and learned that Mr. Gardner was denied from two skilled nursing homes due to "his level of care being more than what the facility could

1

accommodate." See **Exhibit F**: Letter from Kelsey Maurice, dated February 11, 2022. As of Friday, February 11, 2022, Mr. Gardner remains at the hospital with an anticipated February 14, 20202 discharge, and it appears that no facility has been identified that can provide the necessary level care that Mr. Gardner's condition warrants.

The Government also presents an argument that there are options available, other than the defendant being released to provide at-home care from her husband. Specifically, the Government suggests one of the four adult family members or hired help being suitable alternatives to provide the home care for Mr. Gardner. However, according to Mrs. Maurice, none of the children can take advantage of the CT Paid Leave Act. The eldest Gardner daughter, Kirsten, is self-employed, and runs an at-home daycare facility. Her business would close, and she would be left with no income if she had to provide the level of care that her father requires. The eldest son, Bryant, lives at a shelter in Norwich and has a history of drug addiction. Moreover, his five-year old daughter has been placed by DCF with Mrs. Maurice and her husband until the brother gets his addiction under control. As previously mentioned in the defendant's initial motion, the younger son, Andrew, also has drug issues and attends weekly outpatient treatment for his addiction. Finally, Mrs. Maurice works on a commission basis and would not have a source of income if she had to take care of her father. **Id**. As far as finding suitable private homecare, according to Mrs. Maurice, Mr. Gardner's insurance will not cover this cost. **Id**.

The Government asserts that if the immediate family is unable to take on the burden of providing the home care for Mr. Gardner, he has the financial resources to do so. The Government references Mr. Gardner's 401K and/or his portion of the equity in the home as assets that he can liquidate. Certainly, if the Court feels that Alicia Gardner has not

2

received the appropriate punishment for her actions necessitating a further period of incarceration, then the Gardner family will be forced to figure out a way to get Mr. Gardner the help he needs so that they know he will be safe in his home. And if it means liquidating some portion of Mr. Gardner's pension, notwithstanding the possible early withdrawal fees, they will do so. But the Court should be mindful that Alicia Gardner has a sizeable restitution order that confronts her when she is released from prison. She and her husband will be living primarily off the private disability pension that Mr. Gardner receives, which must cover the mortgage and other monthly household costs. Of course, if Mr. Gardner recovers from his injuries, Alicia will try to get her home décor business back on track and running profitably again. However, Mr. Gardner has been suffering reoccurring seizures, most recently on January 18, 2022, and his discharge summary recommends that he follow-up at an epilepsy clinic for further evaluation. See **Exhibit G** (Filed Under Seal). This is of major concern to the Gardner family, especially during Alicia Gardner's absence. If the frequency of these seizures continues to increase, then Alicia Gardner will likely not be able to work again once she is released from prison.

  Certainly, counsel for the defendant understands the victim's position concerning this motion, and understands their disappointment and frustration in not receiving more of a payment towards the outstanding restitution at the time of sentencing. However, no one could have predicted this accident occurring during Alicia Gardner's incarceration. Just imagine the guilt that Alicia Gardner suffers from each day that she is isolated from her husband, unable to hold his hand or lend emotional support to the man that she's been committed to for the past 34 years. This is an extra level of punishment that the Court did not consider at the time of sentencing.

Finally, in January of this year, Senators Murphy and Blumenthal traveled to Danbury FCI to investigate a complaint about staffing shortages and a lack of coronavirus protection at the women's facility. The Senators were denied access to the female facility which raised concerns about the conditions there. "From what we gathered, around 40% of inmates are in either isolation or quarantine. Plus, the facility is badly understaffed. This poses a major risk to both inmates and staff and it must be addressed." Murphy added on his Twitter page. And Senator Blumenthal added, "[t]he drastic lack of staffing has persisted. In fact, it's worse than it was last year or the year before so far as the numbers indicate." This is the facility where Mrs. Gardner is serving her sentence. If a defendant needs to be punished for the crime that she has committed, shouldn't she at least be housed in a facility that meets the federal standards that mandate that the correctional facility be operated in a decent, humane, and safe manner. It appears from the Senators' press release that they have grave concerns about the health and safety standards at Danbury FCI.

**Conclusion**

For the reasons set forth in this response as well as the arguments presented in the initial filing, the defendant moves that the Court grant her motion for release.

> The Defendant
> Alicia Gardner
>
> */s/ William H. Paetzold*
> William H. Paetzold
> Moriarty, Paetzold & Sherwood
> 2230 Main Street
> Glastonbury, CT 06033
> Tel. (860) 657-1010
> Federal Bar No.: ct10074

## CERTIFICATION

This is to certify that the foregoing was filed electronically on February 12, 2022 to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

*/s/ William H. Paetzold*
William H. Paetzold

# EXHIBIT F
# (Letter from Kelsey Maurice)

February 11, 2022

Judge Bolden,

Please consider this letter as a response to the Government Memorandum.

In response to the Government stating that my Father's referral to two Skilled Nursing Homes was rejected due to insurance. I was told by the Case Coordinator at the Hartford Inpatient Rehab Unit (IRU) that he was denied due to "his level of care being more than what the facility could accommodate". The Case Coordinator is the person in charge of making these referrals and therefore receives the response back. It is now Friday, February 11th despite our efforts we still have no plan in place for Monday the 14th when my Father is discharged from Hartford IRU.

The Government also states that my parent's other three children should be able to apply for Family Leave. This is not the case. I make my living on commission income, therefore if I take leave, I do not have any source of income. Additionally, the nature of my position requires daily responsibilities. My employer would be forced to hire a replacement for me in my absence, resulting in my position not being available when I could return to work.

My eldest sister is self-employed. She runs an at-home daycare, if she were to take leave as the Government is suggesting this would mean closing her business. Furthermore, she would be left without an income to provide for her own family of five. My eldest brother is currently residing in a shelter in Norwich and has a history of drug addiction. He has a five year old daughter, who was removed from his care and placed with myself and my husband. This should be enough evidence that neither of the three other children available are able to provide the extent of care that my Father is going to require when discharged on Monday February 14th, 2022.

My Father is being discharged on a wheel-chair level. He will need assistance in bathing, eating, cooking, dressing, using the restroom, etc. The fall down the stairs on January 4, 2022 leading to his recovery of 9 broken bones (5 broken ribs, Left Broken Shoulder, 2 Arms and L1 Vertebrae) has seriously impacted my Father's ability to care for himself, especially compared to his physical and mental health at the time of my Mother's sentencing. He will be confined to a wheelchair at his discharge from Hartford IRU. As far as hiring an in-home nurse, COVID-19 has proven to make that difficult at this time. My father's insurance will not cover this type of care.

In conclusion, I respect the Government's opposition. My family and I are not attempting to minimize the severity of my Mother's actions. My Father is in danger residing at his home by himself and I feel that I have exhausted all other resources to create a solution. My Mother was sentenced to Eight Months of Imprisonment and under the CARES Act Inmates are eligible for Home Confinement after serving 25% of their sentencing. My Mother is going to be eligible for this after March 3, 2022. I would like to emphasize that we are not requesting that my Mother be released with no limitations. We are asking that she be released from the BOP and placed under Home Confinement.

Thank you for your consideration.

Respectfully,

Kelsey Maurice

# EXHIBIT G
# (Discharge Summary-Marc Gardner)
# (UNDER SEAL)